UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK A. HENDERSON, )
)
        Plaintiff, )
)
v. ) Civil Action No. 05-1891 (CKK)
)
FEDERAL BUREAU OF PRISONS, )
)
        Defendant. )
)

## DECLARATION OF J. LATEASE BAILEY

I, J. Latease Bailey, do hereby declare as follows:

1.     I am an Assistant Regional Counsel for the Federal Bureau of Prisons ("BOP"), Southeast Regional Office ("SERO"), Atlanta, Georgia. I have been with BOP since January 4, 1999. I have reviewed BOP's records concerning Mark Henderson, the plaintiff herein. BOP generated and maintains these records in the usual course of business.

2.     On October 1, 2002, Mr. Henderson, register number 15509-016, was sentenced in the District Court for the Eastern District of North Carolina to 150 months (12.5 years) imprisonment with a 5 year term of supervision to follow for Armed Bank Robbery, a violation of Title 18, U.S.C. § 2113(a)(d). See Public Information Inmate Data Report, a true copy of which is attached hereto as Exhibit 1. Based on a Rule 35 government appeal, Mr. Henderson's sentence was changed to 120 months (10 years). Id. Mr. Henderson is projected for release September 18, 2010, via good conduct time credits. Id.

3.     From February 2, 2004, through November 3, 2005, Mr. Henderson was housed at the United States Penitentiary in Atlanta, Georgia ("USP Atlanta"), a High-Security facility. See

GOVERNMENT EXHIBIT A

Inmate History Quarters Report, a true copy of which is attached hereto as Exhibit 2. On November 4, 2005, he was transferred to the penitentiary at the Federal Correctional Complex in Coleman, Florida ("FCC Coleman"), a High Security facility, where he currently is housed. Id.

4. On June 11, 2004, Mr. Henderson was placed in the Special Housing Unit ("SHU") at USP Atlanta pending investigation of an incident in which he was alleged to have been fighting with another inmate. See Exhibit 1 (entry for 6-11-04 indicates "AD," which stands for Administrative Detention); see also Inmate Discipline Data/Chronological Disciplinary Record, a true copy of which is attached hereto as Exhibit 3 (reflecting nature of incident occurring on 6-11-04 as "Fighting With Another Person," a charge code "201").

5. On August 10, 2004, BOP held a disciplinary hearing concerning the 201 charge. See Exhibit 3 at page 2 (noting "DHO Hearing Date"). The Disciplinary Hearing Officer ("DHO") found Mr. Henderson guilty of the charge and imposed several sanctions, including disciplinary segregation for 30 days. Id. ("DS" stands for Disciplinary Segregation).[1] The DHO also recommended that Mr. Henderson receive a disciplinary transfer to another institution. Id. ("Transfer" stands for Disciplinary Transfer).

6. I have attached hereto as Exhibit 4 a true copy of the relevant portions of BOP Program Statement 5100.07, showing the codes applicable to different types of transfers. Mr. Henderson was recommended for a Code 309 disciplinary transfer, which refers to: "Transfer as a result of an act(s) of misconduct related to documented poor institutional adjustment." See Exhibit 4 at page 24.

---

[1] Note: "Dis GCT" stands for Disciplinary Good Conduct Time; "LP Comm" stands for Lost Privilege Commissary; "LP Phone" stands for Lost Privilege Phone; "LP Visit" stands for Lost Privilege Visit.

7.     Based on Mr. Henderson's conviction on the 201 charge, he was assigned a Central Inmate Monitoring System ("CIMS") status of "Separation." (This information appears in documentation contained in Mr. Henderson's Privacy Folder, which is part of BOP's Inmate Central Records System. I do not attach the documentation hereto because, for security reasons, BOP does not release CIMS documents into the public domain.)

8.     USP Atlanta inmates serve disciplinary segregation in the SHU. Mr. Henderson began his 30 days of disciplinary segregation on August 10, 2004, the day the DHO imposed the sanction.

9.     On August 22, 2004—while Mr. Henderson still was serving disciplinary segregation for the 201 infraction—he received an Incident Report for assaulting another inmate without causing serious injury and for engaging in high-level disruptive conduct. See Exhibit 3 at pages 1-2 (noting "Sanctioned Incident Date" and charge codes of "224," which stands for Assaulting Without Serious Injury, and "299," which stands for Disruptive Conduct–High). At a hearing held on September 13, 2004, the DHO found Mr. Henderson to have committed both infractions and imposed several sanctions, including disciplinary segregation for 30 days. Id. at page 2. In addition, the DHO again recommended a disciplinary transfer to another institution. Id.

10.    On August 23 and on September 13, 2004, Mr. Henderson received Incident Reports for assaulting another inmate without causing serious injury and for making a sexual proposal/threat to another inmate, respectively. See Exhibit 3 at page 1. At hearings held on September 14 and September 21, 2004, the DHO found Mr. Henderson to have committed both infractions and sanctioned him by, among other things, imposing two additional 30-day periods

of disciplinary segregation. Id.

11.  Pursuant to these several sanctions, Mr. Henderson served disciplinary segregation through December 12, 2004. See Exhibit 3.

12.  Mr. Henderson remained in SHU from December 13, 2004, through November 3, 2005. While the DHO had recommended him for a disciplinary transfer to another institution, Mr. Henderson could not be considered for transfer until September 13, 2005—i.e. 12 months after his last Incident Report—pursuant to the High Security Transfer Pilot program, a BOP program implemented Bureau-wide on November 15, 2004 ("SHU Pilot Program"). See Memorandum for Executive Staff dated May 11, 2005, a true copy of which is attached hereto as Exhibit 5 (specifying that "[p]ost-disciplinary [administrative] detention will be utilized to discourage inmates from manipulating transfers by requiring a period of clear conduct prior to return to general population or transfer. . . . The specified window of clear conduct [Twelve months for High Security] must be accomplished while the inmate is housed in SHU.").

13.  There is no BOP policy requiring that a DHO's disciplinary-transfer recommendation be approved. Such recommendations are just that: recommendations. Only the Regional Office may approve disciplinary transfers. See Exhibit 4, Program Statement 5100.07, Ch. 10, page 1-2, ¶¶ 1, 2.b.

14.  On March 8, 2005, Mr. Henderson filed an Administrative Remedy Appeal to the Southeast Region's Regional Director challenging his continued placement in SHU after completion of his disciplinary segregation. See March 8, 2005, Regional Administrative Remedy Appeal, a true copy of which is attached hereto as Exhibit 6.

15.  The Regional Director received Mr. Henderson's appeal on March 11, 2005. See

Exhibit 6. On March 17, 2005, the Regional Director denied Mr. Henderson's appeal, explaining that Mr. Henderson could not be considered for transfer "until September 13, 2005, pending clear conduct." See Response to Regional Administrative Remedy Appeal No. 366291-R1, a true copy of which is attached hereto as Exhibit 7.

16. In reviewing Mr. Henderson's regional appeal, the Regional Director also determined that, given Mr. Henderson's CIMS status of "separation," his "placement in general population is not prudent." See Exhibit 7, citing to Program Statement 5270.07. I have attached hereto as Exhibit 8 a true copy of the relevant portion of Program Statement 5270.07, which allows extended placement in Administrative Detention when an inmate's presence in the general population poses a "serious threat . . . to the security or orderly functioning of the institution and when the inmate . . . (6) Is terminating in disciplinary segregation and placement in the general population is not prudent." See 5270.07, Chapter 9, Page 6 at ¶ 1.a.(6).

17. On September 14, 2005, the Southeast Regional Office approved a disciplinary transfer (309 Transfer) of Mr. Henderson. On November 4, 2005, Mr. Henderson was transferred to FCC Coleman.

18. All records related to Mr. Henderson's classification, including all housing and transfer records, are maintained in his Inmate Central File. See Program Statement 5800.11, Inmate Central File, Privacy Folder, and Parole Commission Files, a true copy of which is attached hereto as Exhibit 9, at ¶ 9.b. The Inmate Central File is part of BOP's Inmate Central Records System. Id. at ¶ 8.a.

19. BOP has a three-level administrative remedy process through which an inmate may obtain formal review of a complaint related to any aspect of his confinement. The first step

of the process is for the inmate to file a request for administrative relief (BP-9) with the Warden of the institution where the inmate is confined within 30 days of the date of incident. 28 C.F.R. § 542.14. If dissatisfied with the Warden's response, the inmate may file an appeal (BP-10) to the Regional Director. If dissatisfied with the Regional Director's response, the inmate may file an appeal (BP-11) with the Office of General Counsel. The response from the General Counsel's Office is the final agency decision. 28 C.F.R. § 542.15(a).

20. As a part of my duties, I have access to the computer records known as Sentry, which contain electronic records for the tracking the Administrative Remedy Program.

21. I have reviewed Sentry for the Administrative Remedy record for Mr. Henderson, a true copy of which is attached hereto as Exhibit 10. According to Sentry, Mr. Henderson has filed the following administrative remedy requests relevant to this case:

   a. Remedy Number 362019-F1, regarding the SHU Pilot program. This remedy was rejected because it was not submitted through the counselor or other authorized person, nor did Mr. Henderson attempt informal resolution. He was directed to properly resubmit within 5 days. There is no record of resubmission.

   b. Remedy Number 366291-F1, regarding his desire for a transfer to another facility and his continued placement in SHU. This remedy request was accepted and his remedy was denied.

   c. Remedy Number 366291-R1 was an appeal to the region regarding the denial of remedy number 366291-F1. The region agreed with the institution and also denied the remedy.

   d. Remedy Number 366291-A1, which was an appeal of the denials of 366291-F1

-6-

and 366291-R1. This remedy was rejected because the copies of the remedies Mr. Henderson submitted were not legible. Mr. Henderson was directed to resubmit legible copies.

e. Remedy Number 366291-A2 was a resubmission. However, this remedy, too, was rejected as being illegible. There is no record of a further resubmission of this remedy.

22. By failing to submit legible copies of his remedies to the Office of the General Counsel, Mr. Henderson failed to exhaust all steps of the administrative remedy process regarding his continued placement in SHU and his desire for a transfer to another institution.

I declare pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge and belief. Executed this 6th day of February, 2006.

*[signature]*
J. LATEASE BAILEY
Assistant Regional Counsel
SERO